## AFFIDAVIT OF JENNIFER JUNG

**STATE OF LOUISIANA**

**PARISH OF EAST BATON ROUGE**

BEFORE ME, the undersigned authority, on this day personally appeared, Jennifer Jung, ("Affiant"), who being by me duly sworn, did depose and state that:

1) In 2008, I was introduced to Bruce Gwyn by mutual friends. Bruce Gwyn informed me that he was the managing partner of a hedge fund known as Level III Trading Partners, L.P. (hereinafter, the "Fund") and pitched the Fund to me as a possible investment. By all accounts, Bruce Gwyn was a successful Tulane graduate, an NASD Series-3 qualified broker, and a registered Introducing Broker of the U.S. Commodity Futures Trading Commission ("CFTC") and member of the NFA. Despite my limited investment experience, I trustingly invested $75,000.00 in the Fund on September 30, 2008, after reviewing the Fund's Subscription Agreement and Executive Summary.

2) After investing in the Fund, I received monthly and quarterly statements from the Fund that reflected positive investment gains.

3) By letter dated March 25, 2009, I received a 2008 Schedule K Form from Level III.

4) In August 2010, I received an Account Statement from the Fund, which reflected that my investment had a net gain of $19,230 in July 2010. In an effort to be a prudent investor, I formally requested a withdrawal of $20,000 from the Fund on August 27, 2010. As per the "Thirty Day Notice of Withdrawal," which is signed by Bruce Gwyn as general partner of the Fund, the "effective date of withdrawal" was September 1, 2010.

5) In January 2011, I requested withdrawal of my remaining interest in the Fund to cover personal expenses, including my daughter's wedding.

C:\Users\JJung\AppData\Local\Microsoft\Windows\Temporary Internet Files\Content.IE5\GL4MDFUB\AFFIDAVIT JUNG.docx


EXHIBIT "C"

6) I was paid for my remaining interest in the Fund in two installments: $50,000.00 on January 28, 2011, and $21,196.00 on April 1, 2011. The "Partner's Thirty Day Notice of Withdrawal," which is signed by myself and Bruce Gwyn, confirms that the "effective date of withdrawal" relating to my final withdrawal from the Fund, in the amount of $21,196.00, was April 1, 2011.

7) At no time prior to receiving payments from the Fund did I know or suspect that the Fund and/or Bruce Gwyn were operating a fraudulent scheme, misappropriating funds, or involved in any improprieties relating to the Fund and/or my investment. At no time prior to receiving payments from the Fund did I know or suspect that the Fund was insolvent. Rather, I believed the Fund was legitimate and performing well, relying upon the veracity of monthly and quarterly Account Statements I received from the Fund, which reflected that the Fund had a net asset value of $1,596,930.40 on July 31, 2010; $1,427,936.00 on September 30, 2010; $1,602,655.00 on October 31, 2010; $1,685,388.00 on November 30, 2010; $1,272,493.00 on December 31, 2010; $1,197,869.00 on January 31, 2011; $1,321,148.00 on February 28, 2011; and $1,495,356.00 on March 31, 2011.

8) I, in fact, was so convinced in the legitimacy of Mr. Gwyn and the Fund that I reinvested $15,000 in the Fund on April 20, 2011, and further invested another $20,000.00 with Mr. Gwyn on February 1, 2012, purchasing 588,235 shares of stock in Treaty Energy Corporation (another entity of which Mr. Gwyn was Co-CEO/Director).

9) On or about June 5, 2012, I received an email from Simon Riveles, Esq., advising me and other Fund investors that Riveles Law Group had been retained by the Fund to resolve issues related to a surprise audit by the National Futures Association ("NFA"), which was prompted by the late filing of the Fund's 2011 pool financial statement ("PFS").

10) On June 13, 2012, I received a second email from Simon Riveles, Esq., advising me and other Fund investors that the NFA had completed the audit and instituted a Member Responsibility Action ("MRA") and Associate Responsibility Action ("ARA") against the Fund and Mr. Gwyn (as its principal), based upon the following allegations: Mr. Gwyn personally misappropriated moneys from the Fund account; Mr. Gwyn and Level III failed to disclosure the nature of the Fund's risky investments to investors and misled them as to the value of the Fund's investments; and Mr. Gwyn and Level III failed to cooperate with NFA and provided misleading information to the NFA in connection with its surprise audit. Attached to the July 13, 2012 email was a copy of the Notice of Member Responsibility Action and Associate Responsibility Action served on Mr. Gwyn and Level III, which fully outlined the findings of the audit and basis of the allegations.

11) Prior to receiving the June 13, 2012 email from Simon Riveles, Esq., I had no knowledge of or suspicion of any improprieties, misconduct, and/or fraudulent activities perpetrated by Bruce Gwyn or the Fund.

12) My withdrawals from the Fund, which occurred on September 1, 2010, January 28, 2011, and April 1, 2011, were made twenty (20) to fourteen (14) months *prior to* the audit, when I was first put on notice of alleged improprieties, misconduct, and fraudulent activities on the part of Bruce Gwyn and the Fund.

[SIGNATURE ON NEXT PAGE]

*Jennifer Jung*
Jennifer Jung

SWORN TO AND SUBSCRIBED before me,

Notary, this **11** day of **March** 2016.

_____
Notary Public, State of Louisiana

OFFICIAL SEAL
WILLIAM BOLES KIRTLAND
BAR ROLL # 33220
STATE OF LOUISIANA
PARISH OF EAST BATON ROUGE
My Commission is for Life