AOL Mail (402)

AOL | myAOL | Make AOL My Home Page

**Online Exclusive**
**FREE Camera Phone**
WITH NEW 24% ACTIVATION!
from America's Most
Reliable Wireless Network      Free Activation Fri - Mon

Hi, JenniferJung5    Sign Out

[ Check Mail ]  [ Compose ]

Search The Web [                    ] [ Search ]  enhanced by Google        Settings

[ Search Mail ]    Keep as New | Reply | Forward | Action | Delete | Spam        AIM    People

3 CREDIT SCORES
3 CREDIT REPORTS

**Level III Trading**                                    Events    TMZ.com
                                                        Print |    New Window
bgwyn to you - yesterday    More Details              Add to: To Do, Calendar

Today on AOL
New Mail (402)      Introduction.pdf, Executive_Summary.pdf, Partner-Agreement_8-08.pdf, Subscription_papers_8-08.pdf, LP-2a-Signature_pages.pdf, Wiring_Instructions.pdf,
Old Mail            level3-ppm-Private_Offering_Memorandum_8-08.pdf
Drafts (6)
Sent
IMs                                                     IM with friends and family
Spam (120)                                                        now!
Recently Deleted    Hey Jennifer,                              [ Sign In ]
Contacts            Jim Ghio asked me to send some info on a partnership that we are involved in together. I am the general partner of a hedge fund that trades futures type into AIM
Calendar            called Level III Trading Partners L.P. This fund trades the Futures markets, which allows us to participate on the long and short side of 36 different into Mail
                    markets. These markets include the stock indexes, interest rates, currencies, energies, agricultural, livestock and metals. The fund is currently up 107%
My Folders          YDT through August.
Saved Mail          This is an alternative type of investment that has substantial risk involved. I have made money for very many years trading these markets, but there is
jennifer            volatility in the returns.

                    If you have interest in looking into this further please review the attached documents for a personal account for Level III Trading Partners, L.P.

                    The first attachment is a basic introduction. The 2nd attachment is a quick summary of who I am and what the Partnership is trying to accomplish. The
                    3rd attachment is the Limited Partnership Agreement. The 4th attachment is the subscription papers. This is one of the documents that you need to fill out
"She has Yellow Teeth"   if you want to invest. For individuals please fill out pages 1, 4, 8(check a if not accredited, check bi or bii if accredited), 10(check yes), 21, 22 and 23. The
                    5th attachment is the signature pages for the Limited Partnership. Individuals need to sign pages 1 and 2. The 6th attachment is the wiring instructions.
                    The 7th attachment is the full disclosure document. Keep this for your records if you decide to become a limited partner.

                                                        Basic Version | Accessible Version | Mail Blog | Feedback    © 2008

**EXHIBIT**
tabbies  "D"

http://webmail.aol.com/38991/aol/en-us/Suite.aspx

9/29/2008
JUNG000001

**LEVEL III TRADING PARTNERS, L.P.**
**LEVEL III MANAGEMENT, LLC**
General Partner
220 Hector Ave.
Metairie, Louisiana 70005
(504) 957-7902

Re:    **LEVEL III TRADING PARTNERS, L.P.**

Dear Investor:

Thank you for expressing an interest in **LEVEL III TRADING PARTNERS, L.P.** I am enclosing herewith, the Private Offering Memorandum, the Agreement of Limited Partnership, and Subscription Documents.

If you have any questions about the trading methodology we currently employ and anticipate employing in **LEVEL III TRADING PARTNERS, L.P.**, or should you have any questions about the preparation and return of subscription documents, please contact **Bruce Gwyn** at the Partnership's office.

**The enclosed Private Offering documents are intended for the named recipient only and may not be copied, reproduced, distributed or disseminated in any form or fashion without the prior written consent of LEVEL III MANAGEMENT, LLC.**

Please note that investments in this Fund will be accepted **only if received on or before the first day of the month** or at such other times as the General Partner in its sole discretion shall determine.

If you are not interested in this investment opportunity, please return all documents to **LEVEL III MANAGEMENT, LLC.**

Again, thanks for your interest.

Very truly yours,

**LEVEL III TRADING PARTNERS, L.P.**
**LEVEL III MANAGEMENT, LLC**
General Partner

judgment by its General Partner and the Investment and/or Commodity Trading Advisors and consultants and brokers selected by the General Partner. The General Partner will serve as the trading advisor to the Partnership for incentive fees, reimbursement of the costs and other remuneration charged to the Partnership. The Partnership shall have the power to do any and all acts necessary, appropriate, proper, advisable, incidental or convenient to or for the furtherance of the purposes and business described herein, and shall have, without limitation, any and all of the powers that may be exercised on behalf of the Partnership by the General Partner.

## Managers of General Partner

**BRUCE GWYN** is the founder and managing member of the General Partner. He is a CFTC-registered Principal and Associated Person of the General Partner as well as a member of the NFA in such capacities effective July 3, 2007. Additionally, effective June 22, 2007 Mr. Gwyn is a Principal and Associated Person of **LEVEL III TRADING, LLC**, a CFTC-registered Introducing Broker and NFA member since June 22, 2007.

Mr. Gwyn has a long-standing relationship with the futures markets. From August 1985 to December 1989, he was employed by **Stotler & Co.**, where he worked the bond floor at the Chicago Board of Trade (CBOT). During the years that followed, Mr. Gwyn moved onto managing Stotler's bond desk on the floor, then became **Manager** of Stotler's entire order desk. The order desk handled all of Stotler's clients across the commodity markets and was not located on the floor; instead, Mr. Gwyn monitored the markets via computer. Here, Mr. Gwyn became familiar with the technical and fundamental aspects of the markets, especially the value of inter- and intra-market relationships.

In 1989, Mr. Gwyn joined several other brokers from Stotler & Co. in forming **New Orleans Futures**, an Introducing Broker. Mr. Gwyn was responsible for trading operations at the firm. As a great many traders utilized New Orleans Futures as an Introducing Broker, Mr. Gwyn was able to gain a enormous exposure to different trading strategies during his time there.

In 1995, Mr. Gwyn left New Orleans Futures to pursue a business opportunity apart from the futures industry: **National Business Products**, based in Louisiana. He remains owner of the company to this day.

Despite leaving the industry in a professional capacity in 1995, Mr. Gwyn has not ceased monitoring the markets. Following the markets on a day-to-day basis, Mr. Gwyn began to refine a trading strategy which he hoped would yield great results over time. He continued to discuss his nascent strategy with his former partners and other contacts from the commodity markets and pursued independent research of his own. By 2005, Mr. Gwyn had distilled a three-pronged approach from his years of market study. That same year, he partnered with one of his former associates to jointly trade a proprietary account pursuant to the strategy Mr. Gwyn had derived. The results of the two year period which followed prompted Mr. Gwyn to take his strategy to the arena of money management. Performance information from that period can be found in the Private Offering Memorandum.

Mr. Gwyn is **NASD Series 3 examination-qualified**. He graduated from **Tulane University** in 1985 with a **Bachelor of Arts**.

2

### Limited Partner Reports

The Partnership will send all Partners after the end of each calendar year financial statements audited by the Partnership's independent accountants. At the end of each calendar year, each Partner will be furnished certain tax information for preparation of their respective tax returns. Each Partner will also receive monthly progress reports and certain other reports as the General Partner may deem appropriate.

### Erisa and Other Tax Exempt Entities

Entities subject to the Employee Retirement Income Security Act of 1974, as amended ("ERISA") and other tax-exempt entities may purchase Partnership Interests. However, investment in the Partnership by such entities requires special consideration. Since the Partnership is permitted to borrow, tax-exempt Limited Partners may incur an income tax liability with respect to their share of the Partnership's "unrelated business taxable income." Trustees or administrators of such entities should consult their own legal and tax advisers.

### Certified Public Accountants

The Partnership has retained **KAPLAN & COMPANY, Certified Public Accountants, 60 Revere Drive, Suite 410, Northbrook, Illinois 60062, (847) 272-0001**, as its independent accountants.

THE FORGOING STATEMENT OF INVESTMENT PHILOSOPHY AND INVESTMENT PROCESS IS A BRIEF EXECUTIVE SUMMARY OF THE INFORMATION CONTAINED IN THE PRIVATE OFFERING MEMORANDUM OF LEVEL III TRADING PARTNERS, L.P. THIS EXECUTIVE SUMMARY IS NOT TO BE CONSTRUED AS AN OFFER TO SELL SECURITIES OF OR ANY INTEREST IN LEVEL III TRADING PARTNERS, L.P. OR AS AN INVITATION OR SOLICITATION FOR OFFERS TO BUY SECURITIES OF OR ANY INTEREST IN LEVEL III TRADING PARTNERS, L.P. THIS EXECUTIVE SUMMARY IS NOT TO BE CONSTRUED AS A SUBSTITUTE FOR THE PRIVATE OFFERING MEMORANDUM AND SHOULD BE CONSIDERED ONLY IN CONJUNCTION WITH THE PRIVATE OFFERING MEMORANDUM, THE AGREEMENT OF LIMITED PARTNERSHIP, AND THE SUBSCRIPTION DOCUMENTS; ALL OF WHICH SHOULD BE CONSIDERED AS A WHOLE, IN MAKING THE INVESTMENT DECISION. NOTHING TO THE CONTRARY WITHSTANDING CONTAINED HEREIN, POTENTIAL INVESTORS ARE CAUTIONED THAT THEY MAY RELY ONLY UPON INFORMATION CONTAINED IN THE PRIVATE OFFERING MEMORANDUM OF LEVEL III TRADING PARTNERS, L.P., THE AGREEMENT OF LIMITED PARTNERSHIP OF LEVEL III TRADING PARTNERS, L.P. AND THE RELATED SUBSCRIPTION DOCUMENTS.

JUNG000005

# LEVEL III TRADING PARTNERS, L.P.

## SUBSCRIPTION

**LEVEL III TRADING PARTNERS, L.P.**
**LEVEL III MANAGEMENT, LLC**
General Partner
220 Hector Ave.
Metairie, Louisiana 70005
(504) 957-7902

JUNG000006

## LEVEL III TRADING PARTNERS, L.P.

Complete Name of Subscriber: _Jennifer Jung_

Name of Subscriber's IRA Custodian (if applicable): _____

IRA Custodian Tax I.D. Number: _____

Name of Contact at Subscriber: _Jennifer Jung_

Amount of Capital Contribution: _$75,000_

Social Security/Tax I.D. Number: ███████████████

Business or Residence Address: _8160 County Road #64_
_Apt. 1425_

Mailing Address: _Same_

_____

Telephone Number: Home _(251) 621 8876_   Office _(504) 259-4567_

Email Address:: _jenniferjung50@AOL.com_

Circle Purchaser Type:
* (I) - Individual
* IRA-Individual self directed IRA account or other benefit plan investors
* C - Corporation
* P - Partnership
* T - Trust
* TC - Tenants in Common
* JT - Joint Tenants
* Other : _____
* Please note, Partnership and General Partner, in its sole discretion, may require a subscriber to furnish further written information as to its status as an accredited investor.

1

JUNG000007

## SUBSCRIPTION AND INVESTMENT
## REPRESENTATION AGREEMENT AND POWER OF ATTORNEY
## INSTRUCTIONS

In connection with your subscription for Limited Partnership Interests being offered, by **LEVEL III TRADING PARTNERS, L.P.**, (the "Partnership"), enclosed herewith are the following documents, which must be properly and fully completed, signed, and where applicable, notarized:

1. Please read the following Subscription and Investment Representation Agreement and Power of Attorney and the investor representations and warranties contained therein.

2. Page 4  Please insert name of subscriber and amount of capital commitment.

3. Pages 8, 9 & 10 Please complete applicable sections.

4. Page 17 To be completed and signed by Pennsylvania residents.

5. Pages 19-20 To be completed, signed and notarized by trusts, partnerships and corporations. Both duplicates of signature pages must be signed and returned to the General Partner.

6. Pages 21-22  To be completed, signed and notarized by individuals or joint purchasers. Both duplicates of signature pages must be signed and returned to the General Partner.

7. Subscription Agreement and Investment Representation and Power of Attorney. Complete fully and sign both copies and have your signature **notarized**.

8. Two copies of the Signature Page to the Agreement of Limited Partnership. Complete and sign both copies of the Agreement of Limited Partnership signature page and have your signature **notarized**.

9. Estates, Trusts, Partnership or entity subscribers must submit copies of the estate, trust, partnership, limited partnership or other entity documents including any offering memorandum, partnership agreements and amendments or other like documents evidencing formation and authority.

10. Initial Capital Contribution.  Please make your check payable to the order of "**LEVEL III TRADING PARTNERS, L.P.**" in the amount of your full subscription. If you wish to remit your funds via wire transfer, please contact the General Partner for the appropriate wiring instructions.

11. Pennsylvania Residents.  Complete and sign Pennsylvania Restrictive Legend.

12. Unless otherwise directed, all completed documents should be sent to **LEVEL III TRADING PARTNERS, L.P.**, c/o **LEVEL III MANAGEMENT, LLC**, *General Partner, 220 Hector Ave. Metairie, Louisiana 70005.*

13. Provide a local bank or financial institution letter addressed to **LEVEL III MANAGEMENT, LLC**, the General Partner. (This letter may be brief and state, for example: "John Doe has had an account with our bank since January 1, 1993 and has maintained the account in a satisfactory manner.") The

2

JUNG000008

General Partner will not accept a "To whom it may concern" letter. U.S. banks do reference letters everyday, so there should be no difficulty in obtaining such a letter.

14. Provide a character reference letter addressed to the General Partner.

15. Provide two forms of notarized identification and at least one must bear a photograph. The following are acceptable identifications: a current valid passport, a current valid drivers license, a current valid national identity card bearing a photograph and signature issued by a member country of the European Union. The photocopy must be notarized.
For example:

*"This copy of the passport of John Doe is a true and accurate copy of the original passport provided to me by John Doe, personally known to me to be the person identified by the passport from which this copy has been made. Subscribed and sworn to before me this ___day of_____, 200__."*

Signature line must be signed by the Notary Public.

16. Provide a photo copy of a utility bill (such as a telephone) to verify your local address and telephone number.

17. Investors wishing to "rollover" the IRA for investment in the Partnership should see supplemental instructions and forms.

All forms, subscription forms and other forms referred to herein must be **signed and notarized**. The General Partner will complete forms required by it to be prepared for the Partnership.

The foregoing is part of the General Partners' procedure in connection with the Partnerships' Anti-Money Laundering Policy. The information provided is maintained and kept confidential in accordance with the Partnership's policy on confidential information. The General Partner and the Partnership will use their best efforts to keep the information provided in the answers to this Agreement or otherwise furnished to them strictly confidential. The General Partner and the Partnership may present this Agreement and such information provided herein to such parties as they deem advisable if compelled by law or called upon to establish the availability under any federal or state securities laws of an exemption from registration of the private placement or if the contents thereof are relevant to any issue in any action, suit, or proceeding to which the General Partner or the Partnership is a party or by which it is or may be bound.

Very truly yours,

LEVEL III TRADING PARTNERS, L.P.
LEVEL III MANAGEMENT, LLC

3

## LEVEL III TRADING PARTNERS, L.P.
### (An Alabama Limited Partnership)
## SUBSCRIPTION AND INVESTMENT
## REPRESENTATION AGREEMENT AND POWER OF ATTORNEY

Name of Subscriber: *Jennifer Jung*

Amount of Capital Contribution: *$75,000.00*

**LEVEL III TRADING PARTNERS, L.P.**
**LEVEL III MANAGEMENT, LLC**
**General Partner**
**220 Hector Ave.**
**Metairie, Louisiana 70005**
**(504) 957-7902**

Gentlemen:

### Section 1

1.1    Subscription. The undersigned hereby subscribes for and agrees to purchase limited partnership interests (the "Partnership Interests") of **LEVEL III TRADING PARTNERS, L.P.**, (the "Partnership"), a limited partnership which is being organized under the laws of the State of Alabama, and to make a capital contribution to the Partnership in the amount indicated above and on the signature pages hereof, on the terms and conditions described herein and in the Confidential Private Offering Memorandum dated July 28, 2008 (together with all appendices and supplements (if any) thereto, the "Memorandum") relating to the offering (the "Offering") of the Partnership Interests.

1.2    Purchase.

(a)    The undersigned tenders herewith cash, marketable securities, check made payable to the order of **"LEVEL III TRADING PARTNERS, L.P."** or wire transfer in the full amount of the capital contribution. The undersigned understands that the minimum investment is $100,000, subject to the discretion of the General Partner to accept lesser amounts.

(b)    The undersigned also tenders herewith two executed counterparts of the Signature Page of the Agreement of Limited Partnership.

1.3    Acceptance or Rejection of Subscription.

(a)    The undersigned understands and agrees that the General Partner reserves the right to reject this subscription for the Partnership Interests, in whole or in part at any time prior to the closing date (as hereinafter defined), if in its judgment it deems such action to be in the best interests

4

of the Partnership. The General Partner will promptly notify the undersigned of the undersigned acceptance or rejection of the subscriptions.

(b)  In the event of rejection of this subscription, the undersigned's check, marketable securities or the amount of cash evidenced thereby will be promptly returned to the undersigned without deduction and this Agreement shall have no force or effect.  The subscribers whose subscriptions are accepted will be admitted as limited partners of the Partnership (as so admitted, hereinafter sometimes individually referred to as a "Limited Partner" and, collectively, the "Limited Partners").

1.4    Closing Dates.  The "Closing Date" shall be the date the undersigned is admitted as a Limited Partner.  The Partnership Interests subscribed for herein shall not be deemed issued to, or owned by, the undersigned until the Agreement of Limited Partnership has been executed by the undersigned and countersigned by the General Partner.

## Section 2

2.1    Investor Representations and Warranties.  The undersigned hereby acknowledges, represents, and warrants to, and agrees with, the Partnership and the General Partner as follows:

(a) The undersigned is acquiring the Partnership Interests for the undersigned's own account, for investment purposes only, and not with a view to or for the resale, distribution or fractionalization thereof, in whole or in part, and no other person has a direct or indirect beneficial interest in the Partnership Interests.

(b)  The undersigned acknowledges the understanding of the undersigned that the offering and sale of the Partnership Interests are intended to be exempt from registration under the Securities Act of 1933, as amended (the "Act"), by virtue of Section 4(2) of the Act.

(c)  The undersigned:

(i) has been furnished the Memorandum, the form of a Partnership Agreement, and any documents which may have been made available upon request, and has evaluated the risks of a purchase of the Partnership Interests, including the risks set forth in the Memorandum under "Investment Risk Factors," "Conflicts of Interests of a General Partner" and the considerations described under "Certain Federal Income Tax Consequences" and has relied solely (except as indicated in subsections (ii) and (iii) below) on the information contained in the Memorandum;

(ii) has been provided an opportunity to obtain any additional information concerning the Offering, the Partnership, and all other information to the extent the Partnership or the General Partner possesses such information or can acquire it without reasonable effort or expense;

(iii) has been given the opportunity to ask questions of, and receive answers from, the General Partner concerning the terms and conditions of the offering and other matters pertaining to

5

this investment, and has been given the opportunity to obtain such additional information necessary to verify the accuracy of the information contained in the Memorandum or that which was otherwise provided in order for him to evaluate the merits and risks of an investment in the Partnership to the extent the General Partner possesses such information or can acquire it without reasonable effort or expense, and has not been furnished any other offering literature or prospectus except as mentioned herein or in the Memorandum; and,

          (iv) has determined that the Partnership Interest is a suitable investment for it, that it has financial ability to bear the economic risk of its investment in the Partnership (including the complete loss of its investment), has adequate means of providing for its current needs and personal contingencies and has no need for liquidity with respect to investment in the Partnership.

    (d) In making the decision to purchase the Partnership Interests herein subscribed for, the undersigned has relied solely upon the Memorandum and independent investigations made by the undersigned. The undersigned is not relying on the Partnership or General Partner, or the references, if any, in the Memorandum to any legal opinion, with respect to tax and other economic considerations involved in this investment.

    (e) The undersigned represents, warrants and agrees that the undersigned will not sell or otherwise transfer the Partnership Interests without registration under the Act or an exemption therefrom, and fully understands and agrees that the undersigned must bear the economic risk of his investment for an indefinite period of time because, among other reasons, the Partnership Interests have not been registered under the Act or under the securities laws of any state and, therefore, cannot be resold, pledged, assigned or otherwise disposed of unless they are subsequently registered under the Act and under applicable state securities laws or an exemption from such registration is available. The undersigned understands that the Partnership is under no obligation to register the Partnership Interests on behalf of the undersigned or to assist the undersigned in complying with any exemption from such registration under the Act. The undersigned also understands that sales or transfers of the Partnership Interests are further restricted by the provisions of the Agreement of Limited Partnership and state securities laws.

    (f) If the undersigned is a corporation, trust, employee benefit plan, partnership or tax exempt entity, it is authorized and qualified to become a Limited Partner in, and each of which is authorized and qualified to enter into, this Agreement, the Agreement of Limited Partnership and its payment of its capital contributions has been duly authorized; this Agreement has been and, upon acceptance of the undersigned's subscription, the Agreement of Limited Partnership will be duly delivered; and this Agreement will constitute valid obligations of the undersigned, legally binding upon it and enforceable against it in accordance with their respective terms.

    (g) No representations or warranties except as contained in the Memorandum, if any, have been made to the undersigned by the Partnership or the General Partner, or any officer, employee, agent or affiliate of either of them.

6

(h) Any information which the undersigned has heretofore furnished, herewith furnishes and may, prior to the closing date, furnish to the General Partner is correct and complete as of the date of this Agreement and if there should be any material change in such information prior to his admission to the Partnership as a Limited Partner he will immediately furnish such revised or corrected information to the General Partner.

(i) If the undersigned enters into a swap, structured note or other derivative instrument with a third party (each, a "Third Party"), the return from which is based in whole or in part on the return of the Partnership (each, a "Swap"), the undersigned represents and warrants that with respect to any Third Party entering into a Swap:  (a) the Third Party is authorized under its constitutional documents (e.g., certificate of incorporation, by-laws, partnership agreement or trust agreement) and applicable law to enter into such Swap and would also be so authorized to invest directly in the Partnership; (b) the Third Party has received and reviewed a copy of the Memorandum and this Agreement; (c) the Third Party acknowledges that the Partnership and its affiliates are not responsible for the legality, suitability or tax consequences of the Swap and that the undersigned is not an agent of the Partnership; (d) the Third Party is an "accredited investor" under Regulation D; and (e) the third party is not a Benefit Plan Investor.  Nothing herein constitutes an agreement or statement by the Partnership as to the legality of any Swap or the suitability of any Swap for any Third Party.

(j) The undersigned agrees to furnish the Partnership with any information, representations and forms as shall reasonably be requested by the Partnership from time to time to assist it in complying with any applicable law or tax requirements or determining the extent of, and in fulfilling, its withholding obligations.  The undersigned agrees to furnish the General Partner with any representations and forms as shall reasonably be requested by the General Partner to assist it in obtaining any exemption, reduction or refund of any withholding or other taxes imposed by any taxing authority or other governmental agency upon the Partnership or amounts paid to the Partnership. The undersigned agrees to provide the General Partner with an executed Form W-9, Form 8821 and Form W-8BEN (as appropriate) upon request. If the undersigned is a U.S. person for U.S. federal income tax purposes, the undersigned certifies, under penalty of perjury, that all of the tax information provided by the undersigned, including the undersigned's taxpayer identification number, is true, correct and complete.

(k) (i)The undersigned has not been formed, organized, reorganized, capitalized or recapitalized [1] for the purpose of acquiring Partnership Interests, (ii) the undersigned's subscription for Partnership Interests is no more than 40% of the undersigned's total assets or, if the undersigned is a private investment fund with binding, unconditional capital commitments from the undersigned's partners or members, no more than 40% of the undersigned's subscription, (iii) the undersigned's stockholders, partners, members or other beneficial owners do not have and will not have individual discretion as to their participation or non-participation through the undersigned in

---

[1]
"Recapitalized" includes new investments made by the undersigned solely for the purpose of financing the purchase of the Partnership Interest and not made pursuant to a prior financing commitment.

JUNG000013

(A) the undersigned's purchase of a Partnership Interest or (B) particular investments made by the undersigned, and (C) the undersigned is not a participant-directed defined contribution plan. If the undersigned's subscription and the subscriptions of any other purchasers that are affiliates of the undersigned together equal or exceed 10% of the aggregate voting securities of all of the partners, the undersigned is not an "investment company" as defined in section 3(a) of the Investment Company Act, and the undersigned has not relied and does not intend to rely upon either of the exceptions from such definition set forth in sections 3(c)(1) and 3(c)(7) of the Investment Company Act in order to avoid being classified as an investment company.

(l) If the undersigned is a "Non-U.S. Person," [2] then the undersigned shall have so notified the General Partner in writing at least five business days prior to the scheduled closing date.

If the undersigned is unable to make the representation in this Section (i.e., if the undersigned is a Non-U.S. Person), the undersigned shall have so notified the Partnership in writing at least five business days prior to the date hereof.

The representations and warranties set forth in this Agreement shall be deemed repeated and reaffirmed by the undersigned as of each date that the undersigned contributes capital to the Partnership. If at any time during the term of the Partnership the representations and warranties set forth in this Agreement shall cease to be true, the undersigned shall promptly so notify the General Partner in writing.

2.2    Investor Representations and Warranties Concerning Suitability and Accredited Investor Status. The undersigned represents and warrants the following information:

**INITIAL ALL APPROPRIATE SPACES ON THE FOLLOWING PAGES INDICATING THE BASIS UPON WHICH THE UNDERSIGNED QUALIFIES AS AN ACCREDITED INVESTOR (PLEASE INITIAL ONLY WHERE APPROPRIATE).**

(a)         _____ The undersigned is not an accredited investor.

(b)    (i)    _____ The undersigned hereby certifies that the undersigned is an accredited investor because the undersigned has an individual net worth, or the undersigned and the undersigned's spouse have a combined net worth at the time of purchase, in excess of $1,000,000.

(ii)    _____ The undersigned hereby certifies that the undersigned is an accredited investor because the undersigned had individual income (exclusive of any income attributable to the

---

[2]

For purposes of this representation, a "Non-U.S. Person" means any of the following: (a) a citizen of a country other than the United States, (b) an entity organized under the laws of a jurisdiction other than those of the United States or any state, territory or possession of the United States, (c) a government other than the government of the United States or of any state, territory or possession of the United States, (d) a corporation of which, in the aggregate, more than 25% of the capital stock is owned of record or voted by Persons described in any of clauses (a) through (c) above, or (e) a representative of, or entity controlled by, any Person referred to in any of the foregoing clauses (a) through (d).

JUNG000014

undersigned's spouse) of more than $200,000 in the prior two calendar years or joint income with the undersigned's spouse in excess of $300,000 for each of those years and the undersigned reasonably expects to reach the same income level in the current calendar year.

(iii) ____ The undersigned hereby certifies that it is an accredited investor because it is a bank as defined in Section 3(a)(2) of the Act.

(iv) ____ The undersigned hereby certifies that it is an accredited investor because it is a savings and loan association or other institution as defined in Section 3(a)(5) of the Act, whether acting in its individual or fiduciary capacity.

(v) ____ The undersigned hereby certifies that it is an accredited investor because it is a broker or dealer registered pursuant to Section 15 of the Securities Exchange Act of 1934, as amended.

(vi) ____ The undersigned hereby certifies that it is an accredited investor because it is an insurance company as defined in Section 2(13) of the Act.

(vii) ____ The undersigned hereby certifies that it is an accredited investor because it is an investment company registered under the Investment Company Act of 1940, as amended, or a business development company as defined in Section 2(a)(48) of the Act.

(viii) ____ The undersigned hereby certifies that it is an accredited investor because it is a Small Business Investment Company licensed by the U.S. Small Business Administration under Section 301(c) or (d) of the Small Business Investment Act of 1958, as amended.

(ix) ____ The undersigned hereby certifies that it is an accredited investor because it is a private business development company as defined in Section 202(a)(22) of the Investment Advisers Act of 1940, as amended.

(x) ____ The undersigned hereby certifies that it is an accredited investor because it is a corporation, partnership, an organization described in Section 501(c)(3) of the Internal Revenue Code of 1986, or Massachusetts or similar business trust, not formed for the specific purpose of acquiring the Partnership's Interests, with total assets in excess of $5,000,000.

(xi) ____ The undersigned hereby certifies that it is an accredited investor because it is a trust, with total assets in excess of $5,000,000, not formed for the specific purpose of acquiring the Partnership Interests, whose purchase of the Partnership Interests is directed by a sophisticated person as described in Rule 506(b)(ii) of Regulation D promulgated under the Act.

(xii) ____ The undersigned hereby certifies that it is an accredited investor because it is an entity in which all of the equity owners meet one of the requirements of subsections (i) through (xi) hereof.

JUNG000015

(xiii) ____The undersigned certifies that the undersigned is a director or executive officer of the General Partner and/or an employee of a member of Investment Advisor.

(c)    The undersigned hereby certifies that the undersigned has such knowledge and experience in financial and business matters that the undersigned is capable of evaluating the merits and risks of an investment in partnership interests and that purchase of a Limited Partnership Interest in the Partnership may be deemed to be a speculative investment and is not intended as a complete investment program. The undersigned hereby certifies that the undersigned acknowledged that an investment in the Partnership is designed only for investors who have adequate means of providing for their needs and contingencies without relying on distributions or withdrawals from their Partnership accounts; who are financially able to maintain their investment; and who can afford the loss of their investment. There can be no assurance that the Partnership will achieve its investment objective, and investors may lose a substantial portion of their investment. The undersigned further hereby certifies that the undersigned is sophisticated and that together with their spouse, qualify as "accredited investors" as defined in Regulation D under the Securities Act.

(d)    The undersigned confirms that (i) the undersigned will not use the assets of a "Benefit Plan Investor" as defined in the United States Department of Labor ("DOL") Regulation §2510.3-101 to invest in the Partnership, provided that a Benefit Plan Investor includes (i) any employee benefit plan as defined in section 3(3) of the U.S. Employee Retirement Income Security Act of 1974, as amended ("ERISA"), whether or not it is subject to the provisions of Title I of ERISA (including governmental plans), (ii) any plan described in section 4975(e)(1) of the Internal Revenue Code of 1986, as amended (including an individual retirement account), and (iii) any entity, including a master trust established for one or more pension plans, whose underlying assets include plan assets by reason of a plan's investment in an entity;

Yes  [✓]          No  []

or (ii) if the undersigned is an insurance company general account, no portion of the assets in the undersigned's general account constitutes "plan assets" subject to ERISA.

Yes  [✓]          No  []

The undersigned shall promptly provide to the General Partner such information as the General Partner may from time to time request for purposes of determining whether the assets of the Partnership are "plan assets" under ERISA.

The undersigned confirms that, if a Partnership Interest is being acquired by the undersigned by or on behalf of any "employee benefit plan" subject to section 3(3) of ERISA or of a plan subject to section 4975 of the Code or any entity the assets of which constitute assets of such employee benefit plan or plans, (x) such acquisition has been duly authorized in accordance with the governing documents of such plan and (y) such acquisition and the subsequent holding of the Partnership Interest does not and will not constitute a "prohibited transaction" within the meaning of section 406 of ERISA or section 4975 of the Code that is not subject to an exemption contained in ERISA or in

10

JUNG000016

the rules and regulations adopted by the DOL thereunder.  The undersigned acknowledges that as a Limited Partner the undersigned will have no right to withdraw from the Partnership except as specifically provided in the Agreement of Limited Partnership.

2.3   <u>Financial and Other Information.</u> The undersigned represents and warrants that (a) the financial statements (if any) of the undersigned furnished to the Partnership and the General Partner have been prepared in accordance with generally accepted accounting principles consistently applied and present fairly the position of the undersigned as at such dates and the results of its operations and cash flow for the periods then ended and (b) the information in writing (if any) furnished to the Partnership and the General Partner at their request is true and complete in all material respects.

2.4   <u>Investor Awareness.</u> The undersigned acknowledges, represents, agrees and is aware that:

(a) the Partnership has no financial and operating history;

(b) the representations, warranties, agreements, undertakings and acknowledgements made by the undersigned in this Agreement are made with the intent that they be relied upon by the Partnership and the General Partner in determining the suitability of the undersigned as a purchaser of the Partnership Interests, and shall survive the admission of the undersigned as a Limited Partner in the Partnership. In addition, the undersigned undertakes to notify the General Partner immediately of any change in any representation, warranty or other information relating to the undersigned set forth herein or otherwise furnished to the General Partner;

(c) there are substantial risks of loss of investment incidental to the purchase of the Partnership Interests, including those summarized under "Risk Factors" and in other portions of the Memorandum;

(d) the investment in this Partnership is an illiquid investment and the undersigned must bear the economic risk of the undersigned's investment in the Partnership Interests for an indefinite period of time; and,

(e) the Agreement of Limited Partnership contains substantial restrictions on transferability of the Partnership Interests.

2.5   <u>Authority to Date Partnership Agreement and Certificate of Limited Partnership of the Partnership.</u>  The undersigned hereby authorizes the General Partner to date the Partnership Agreement and the Certificate of Limited Partnership of the Partnership.

<u>Section 3</u>

3.1   <u>Power of Attorney.</u> The undersigned, as principal, does hereby constitute and appoint the General Partner, as the undersigned's true and lawful attorney, in the name, place and stead of the undersigned as partner of the Partnership, to make, execute, sign, acknowledge, swear to and file:

11

JUNG000017

(a) all filings, if any, which require the signature of one or more Limited Partners under the Alabama Revised Uniform Limited Partnership Act, including, without limitation, any such filing for the purpose of admitting the undersigned and others as limited partners of the Partnership and describing their initial or any increased capital contributions;

(b) any and all instruments, certificates and other documents which may be deemed necessary or desirable to effect the winding-up and termination of the Partnership (including, but not limited to, a Certificate of Cancellation of the Certificate of Limited Partnership);

(c) any business certificate, fictitious name certificate, amendment thereto, or other comparable instrument or document of any kind necessary or desirable to accomplish the business, purpose and objectives of the Partnership, or required by any applicable Federal, state or local law; and,

(d) any documents, instruments and conveyances as may be necessary or appropriate to carry out the provisions of the Agreement of Limited Partnership. The undersigned does hereby ratify and confirm all whatsoever that his said attorney shall do, or cause to be done, by virtue of this power of attorney. This power of attorney is coupled with an interest, is irrevocable, and shall survive and shall not be affected by the death, disability, incompetency, termination, bankruptcy, insolvency or dissolution of the undersigned. Such representative and attorney-in-fact shall not have any right, power or authority to amend or modify the Agreement of Limited Partnership of the Partnership when acting in such capacity.

Section 4

4.1     Indemnity. The undersigned agrees to indemnify and hold harmless the Partnership, the General Partner, and each other person, if any, who controls or is controlled by any thereof, within the meaning of Section 15 of the Act, against any and all loss, liability, claim, damage and expense whatsoever (including but not limited to, any and all expenses reasonably incurred in investigating, preparing or defending against any litigation commenced or threatened or any claim whatsoever) arising out of or based upon any false representation or warranty or breach or failure by the undersigned to comply with any covenant or agreement made by the undersigned herein or in any other document furnished by the undersigned to any of the foregoing in connection with this transaction.

4.2     Modification. Neither this Agreement nor any provisions hereof shall be modified, discharged or terminated except by an instrument in writing signed by the party against whom any waiver, change, discharge or termination is sought.

4.3     Notices. Any notice, demand, or other communication which any party hereto may be required, or may elect, to give to anyone interested hereunder shall be sufficiently given if (a) deposited, postage prepaid, in a United States mail letter box, registered or certified mail, return receipt requested, addressed to such address as shall have been provided in writing to the General

12

JUNG000018

Partner, or (b) delivered personally at such address.

4.4    Binding Effect. Except as otherwise provided herein, this Agreement shall be binding upon and inure to the benefit of the parties and their heirs, executors, administrators, successors, legal representatives and permitted assigns.  If the undersigned is more than one person, the obligations of the undersigned shall be joint and several and the agreements, representations, warranties, and acknowledgements herein contained shall be deemed to be made by and be binding upon each such person and his heirs, executors, administrators and successors.

4.5    Entire Agreement. This instrument contains the entire agreement of the parties, and there are no representations, covenants or other agreements except as stated or referred to herein.

4.6    Assignability. This Agreement is not transferable or assignable by the undersigned except as is expressly permitted in the Agreement of Limited Partnership.

4.7    Applicable Law. This Agreement shall be governed by and construed in accordance with the laws of the State of Alabama applicable to contracts made and to be performed entirely within such state.  The undersigned agrees that all controversies which may arise between the undersigned and the Partnership or the General Partner shall be determined and settled by arbitration pursuant to the rules of the American Arbitration Association.  The venue of any such arbitration shall be in Alabama. Any award rendered therein shall be final and conclusive upon the parties, and a judgment thereon may be entered in any Court of competent jurisdiction.  This paragraph shall survive the expiration or termination of this Agreement.

4.8    Gender. All pronouns contained herein and any variations thereof shall be deemed to refer to the masculine, feminine or neuter, singular or plural, as the identity of the parties hereto may require.

4.9    Counterparts.  This Agreement may be executed through the use of separate signature pages or in any number of counterparts, and each of such counterparts shall, for all purposes, constitute one agreement binding on all the parties, notwithstanding that all parties are not signatories to the same counterpart.

4.10    Nature of Offering.

THE INTERESTS OFFERED HEREBY HAVE NOT BEEN REGISTERED UNDER THE SECURITIES ACT OF 1933, AS AMENDED, OR THE SECURITIES LAWS OF CERTAIN STATES AND ARE BEING OFFERED AND SOLD IN RELIANCE ON EXEMPTIONS FROM THE REGISTRATION REQUIREMENTS OF SAID ACT AND SUCH LAWS. THE INTERESTS ARE SUBJECT TO RESTRICTION ON TRANSFERABILITY AND RESALE AND MAY NOT BE TRANSFERRED OR RESOLD EXCEPT AS PERMITTED UNDER SAID ACT AND SUCH LAWS PURSUANT TO REGISTRATION OR EXEMPTION THEREFROM. THE INTERESTS HAVE NOT BEEN APPROVED OR DISAPPROVED BY THE SECURITIES AND EXCHANGE COMMISSION, ANY STATE SECURITIES

13

COMMISSION OR OTHER REGULATORY AUTHORITY, NOR HAVE ANY OF THE FOREGOING AUTHORITIES PASSED UPON OR ENDORSED THE MERITS OF THIS OFFERING OR THE ACCURACY OR ADEQUACY OF THE MEMORANDUM. ANY REPRESENTATION TO THE CONTRARY IS UNLAWFUL.

4.11    Information Required by Certain States' Securities Laws.

## NOTICE TO RESIDENTS OF ALL STATES

IN MAKING AN INVESTMENT DECISION INVESTORS MUST RELY ON THEIR OWN EXAMINATION OF THE ISSUER AND THE TERMS OF THE OFFERING, INCLUDING THE MERITS AND RISKS INVOLVED. THESE INTERESTS HAVE NOT BEEN RECOMMENDED BY ANY FEDERAL OR STATE SECURITIES COMMISSION OR REGULATORY AUTHORITY. FURTHERMORE, THE FOREGOING AUTHORITIES HAVE NOT CONFIRMED THE ACCURACY OR DETERMINED THE ADEQUACY OF THIS DOCUMENT. ANY REPRESENTATION TO THE CONTRARY IS A CRIMINAL OFFENSE. THESE INTERESTS ARE SUBJECT TO RESTRICTIONS ON TRANSFERABILITY AND RESALE AND MAY NOT BE TRANSFERRED OR RESOLD EXCEPT AS PERMITTED UNDER THE SECURITIES ACT OF 1933, AS AMENDED, AND THE APPLICABLE STATE SECURITIES LAWS, PURSUANT TO REGISTRATION OR EXEMPTION THEREFROM. INVESTORS SHOULD BE AWARE THAT THEY WILL BE REQUIRED TO BEAR THE FINANCIAL RISKS OF THIS INVESTMENT FOR AN INDEFINITE PERIOD OF TIME.

## FOR ALABAMA RESIDENTS

THESE SECURITIES ARE OFFERED PURSUANT TO A CLAIM OF EXEMPTION UNDER THE ALABAMA SECURITIES ACT. A REGISTRATION STATEMENT RELATING TO THESE SECURITIES HAS NOT BEEN FILED WITH THE ALABAMA SECURITIES COMMISSION. THE COMMISSION DOES NOT RECOMMEND OR ENDORSE THE PURCHASE OF ANY SECURITIES, NOR DOES IT PASS UPON THE ACCURACY OR COMPLETENESS OF THIS PRIVATE PLACEMENT MEMORANDUM. ANY REPRESENTATION TO THE CONTRARY IS A CRIMINAL OFFENSE.

## FOR CALIFORNIA RESIDENTS

THE SALE OF THE SECURITIES WHICH ARE THE SUBJECT OF THIS OFFERING HAS NOT BEEN QUALIFIED WITH THE COMMISSIONER OF CORPORATIONS OF THE STATE OF CALIFORNIA AND IS BEING MADE PURSUANT TO THE EXEMPTION FROM QUALIFICATION AVAILABLE UNDER THE NATIONAL SECURITIES MARKET IMPROVEMENT ACT OF 1996 OR. IN THE ALTERNATIVE, UNDER IN SECTION 25102(f) OF THE CALIFORNIA CORPORATIONS CODE FOR PRIVATE PLACEMENTS, AMONG OTHER PRIVATE PLACEMENT EXEMPTIONS.

JUNG000020

IT IS UNLAWFUL TO CONSUMMATE A SALE OR TRANSFER OF THIS SECURITY, OR ANY INTEREST THEREIN, OR TO RECEIVE ANY CONSIDERATION THEREFOR, WITHOUT THE PRIOR WRITTEN CONSENT OF THE COMMISSIONER OF CORPORATIONS OF THE STATE OF CALIFORNIA, EXCEPT AS PERMITTED IN THE COMMISSIONER'S RULES.

## FOR CONNECTICUT RESIDENTS

THESE SECURITIES HAVE NOT BEEN REGISTERED UNDER SECTION 36-485 OF THE CONNECTICUT UNIFORM SECURITIES ACT AND CANNOT BE RESOLD OR TRANSFERRED EXCEPT IN A TRANSACTION WHICH IS EXEMPT UNDER THAT ACT OR PURSUANT TO AN EFFECTIVE REGISTRATION STATEMENT UNDER THAT ACT OR IN A TRANSACTION WHICH IS OTHERWISE IN COMPLIANCE WITH THAT ACT.

## FOR FLORIDA RESIDENTS

THESE SECURITIES HAVE NOT BEEN REGISTERED UNDER THE SECURITIES ACT OF 1933, AS AMENDED, OR THE FLORIDA SECURITIES ACT, BY REASON OF SPECIFIC EXEMPTIONS THEREUNDER RELATING TO THE LIMITED AVAILABILITY OF THE OFFERING. THESE SECURITIES CANNOT BE SOLD, TRANSFERRED OR OTHERWISE DISPOSED OF TO ANY PERSON OR ENTITY UNLESS SUBSEQUENTLY REGISTERED UNDER THE SECURITIES ACT OF 1933, AS AMENDED, OR THE LAWS OF THIS STATE, IF SUCH REGISTRATION IS REQUIRED.

THE FLORIDA SECURITIES ACT PROVIDES, WHERE SALES ARE MADE TO FIVE OR MORE PERSONS IN FLORIDA, THAT ANY SALE MADE PURSUANT TO SUBSECTION 517.061(12) OF THE FLORIDA SECURITIES ACT SHALL BE VOIDABLE BY SUCH FLORIDA PURCHASER EITHER WITHIN THREE DAYS AFTER THE FIRST TENDER OF CONSIDERATION IS MADE BY SUCH PURCHASER TO THE ISSUER, AN AGENT OF THE ISSUER, OR AN ESCROW AGENT, OR WITHIN THREE DAYS AFTER THE AVAILABILITY OF THAT PRIVILEGE IS COMMUNICATED TO SUCH PURCHASER, WHICHEVER OCCURS LATER.

## FOR GEORGIA RESIDENTS

THESE INTERESTS HAVE BEEN ISSUED OR SOLD IN RELIANCE ON PARAGRAPH (13) OF CODE SECTION 10-5-9 OF THE 'GEORGIA SECURITIES ACT OF 1973' AND MAY NOT BE SOLD OR TRANSFERRED EXCEPT IN A TRANSACTION WHICH IS EXEMPT UNDER SUCH ACT OR PURSUANT TO AN EFFECTIVE REGISTRATION UNDER SUCH ACT.

JUNG000021

### FOR IOWA RESIDENTS

THESE SECURITIES ARE SUBJECT TO RESTRICTIONS ON TRANSFERABILITY AND RESALE AND MAY NOT BE TRANSFERRED OR RESOLD EXCEPT UNDER THE SECURITIES ACT OF 1933, AS AMENDED, IN THE APPLICABLE STATE SECURITIES LAW, PURSUANT TO REGISTRATION FOR EXEMPTION THEREFROM. INVESTORS SHOULD BE AWARE THAT THEY WILL BE REQUIRED TO BEAR THE FINANCIAL RISKS OF THIS INVESTMENT FOR AN INDEFINITE PERIOD OF TIME.

### FOR MARYLAND RESIDENTS

THESE SECURITIES HAVE NOT BEEN REGISTERED UNDER THE SECURITIES ACT OF 1933, AS AMENDED, OR THE MARYLAND SECURITIES ACT, BY REASON OF SPECIFIC EXEMPTIONS THEREUNDER RELATING TO THE LIMITED AVAILABILITY OF THE OFFERING. THESE SECURITIES CANNOT BE SOLD, TRANSFERRED OR OTHERWISE DISPOSED OF TO ANY PERSON OR ENTITY UNLESS SUBSEQUENTLY REGISTERED UNDER THE SECURITIES ACT OF 1933, AS AMENDED, OR THE MARYLAND SECURITIES ACT, IF SUCH REGISTRATION IS REQUIRED.

### FOR NEW HAMPSHIRE RESIDENTS

NEITHER THE FACT THAT A REGISTRATION STATEMENT OR AN APPLICATION FOR A LICENSE HAS BEEN FILED UNDER CHAPTER 421-B OF THE NEW HAMPSHIRE REVISED STATUTES (THE "RSA") WITH THE STATE OF NEW HAMPSHIRE NOR THE FACT THAT A SECURITY IS EFFECTIVELY REGISTERED OR A PERSON IS LICENSED IN THE STATE OF NEW HAMPSHIRE CONSTITUTES A FINDING BY THE SECRETARY OF STATE OF NEW HAMPSHIRE THAT ANY DOCUMENT FILED UNDER RSA 421-B IS TRUE, COMPLETE AND NOT MISLEADING. NEITHER ANY SUCH FACT NOR THE FACT THAT AN EXEMPTION OR EXCEPTION IS AVAILABLE FOR A SECURITY OR A TRANSACTION MEANS THAT THE SECRETARY OF STATE HAS PASSED IN ANY WAY UPON THE MERITS OR QUALIFICATIONS OF, OR RECOMMENDED OR GIVEN APPROVAL TO, ANY PERSON, SECURITY, OR TRANSACTION. IT IS UNLAWFUL TO MAKE, OR CAUSE TO BE MADE, TO ANY PROSPECTIVE PURCHASER, CUSTOMER, OR CLIENT ANY REPRESENTATION INCONSISTENT WITH THE PROVISIONS OF THIS PARAGRAPH.

### FOR NEW YORK RESIDENTS

THIS PRIVATE OFFERING MEMORANDUM HAS NOT BEEN REVIEWED BY THE ATTORNEY GENERAL PRIOR TO ITS ISSUANCE AND USE. THE ATTORNEY GENERAL OF THE STATE OF NEW YORK HAS NOT PASSED ON OR ENDORSED THE MERITS OF THIS OFFERING. ANY REPRESENTATION TO THE CONTRARY IS UNLAWFUL.

JUNG000022

THIS PRIVATE OFFERING MEMORANDUM DOES NOT CONTAIN AN UNTRUE STATEMENT OF A MATERIAL FACT OR OMIT TO STATE A MATERIAL FACT NECESSARY TO MAKE THE STATEMENTS MADE IN LIGHT OF THE CIRCUMSTANCES UNDER WHICH THEY WERE MADE, NOT MISLEADING. IT CONTAINS A FAIR SUMMARY OF THE MATERIAL TERMS AND DOCUMENTS PURPORTED TO BE SUMMARIZED HEREIN.

FOR PENNSYLVANIA RESIDENTS

UNDER PROVISIONS OF THE PENNSYLVANIA SECURITIES ACT OF 1972, EACH PENNSYLVANIA RESIDENT SHALL HAVE THE RIGHT TO WITHDRAW HIS ACCEPTANCE WITHOUT INCURRING ANY LIABILITY TO THE SELLER, UNDERWRITER (IF ANY) OR ANY PERSON, WITHIN TWO (2) BUSINESS DAYS FROM THE DATE OF RECEIPT BY THE ISSUER OF HIS WRITTEN BINDING CONTRACT OF PURCHASE OR IN THE CASE OF A TRANSACTION IN WHICH THERE IS NO WRITTEN BINDING CONTRACT OF PURCHASE, WITHIN TWO (2) BUSINESS DAYS AFTER HE MAKES THE INITIAL PAYMENT FOR THE SECURITIES BEING OFFERED.

ALL INVESTORS MUST SIGN A STATEMENT AS FOLLOWS:

EACH PENNSYLVANIA RESIDENT WHO SUBSCRIBES FOR THE SECURITIES BEING OFFERED HEREBY AGREES NOT TO SELL THESE SECURITIES FOR A PERIOD OF TWELVE MONTHS AFTER THE DATE OF PURCHASE.

PLEASE EXECUTE AT THE SPACE PROVIDED:
By: _____
Print Name: _____

TO ACCOMPLISH THIS WITHDRAWAL, A SUBSCRIBER NEED ONLY SEND A LETTER OR TELEGRAM TO THE SELLING AGENT AT THE ADDRESS SET FORTH IN THE TEXT OF THE MEMORANDUM INDICATING HIS OR HER INTENTION TO WITHDRAW. SUCH LETTER OR TELEGRAM SHOULD BE SENT AND POSTMARKED PRIOR TO THE END OF THE AFOREMENTIONED SECOND BUSINESS DAY. IT IS PRUDENT TO SEND SUCH LETTER BY CERTIFIED MAIL, RETURN RECEIPT REQUESTED TO ENSURE THAT IT IS RECEIVED AND ALSO TO EVIDENCE THE TIME WHEN IT WAS MAILED. IF THE REQUEST IS MADE ORALLY (IN PERSON OR BY TELEPHONE TO THE SELLING AGENT AT THE NUMBER LISTED IN THE TEXT OF THE MEMORANDUM), A WRITTEN CONFIRMATION THAT THE REQUEST HAS BEEN RECEIVED SHOULD BE REQUESTED.

FOR SOUTH CAROLINA RESIDENTS

THESE SECURITIES ARE OFFERED PURSUANT TO A CLAIM OF EXEMPTION

17

JUNG000023

UNDER THE SOUTH CAROLINA UNIFORM ACT. A REGISTRATION STATEMENT RELATING TO THESE SECURITIES HAS NOT BEEN FILED WITH THE SOUTH CAROLINA SECURITIES COMMISSIONER. THE COMMISSIONER DOES NOT RECOMMEND OR ENDORSE THE PURCHASE OF ANY SECURITIES, NOR DOES IT PASS UPON THE ACCURACY OR COMPLETENESS OF THIS MEMORANDUM. ANY REPRESENTATION TO THE CONTRARY IS A CRIMINAL OFFENSE.

FOR TEXAS RESIDENTS

THESE SECURITIES HAVE NOT BEEN REGISTERED UNDER APPLICABLE SECURITIES LAWS OF TEXAS AND THEREFORE CANNOT BE RESOLD OR TRANSFERRED UNLESS THEY ARE SUBSEQUENTLY REGISTERED OR UNLESS AN EXEMPTION FROM REGISTRATION IS MADE AVAILABLE.

JUNG000024

## INDIVIDUAL SIGNATURE PAGE

The undersigned has executed this Agreement on this 30 day of Sept , 200 8

Amount of Capital Contribution $ 75,000.00

Type of Ownership (check one):

X    Individual
_____ Joint Tenants with Rights of Survivorship
_____ Tenants in Common
_____ Tenants by the Entirety
_____ Community Property
_____ IRA, Self Directed or other benefit plan investor

Jennifer Jung
Name of Joint Purchaser (Please print)        Name of Joint Purchaser (Please print)

X _____    X _____
Signature        Signature

_____
Name of IRA Custodian
X _____
Authorized Signature

### ACKNOWLEDGMENT

STATE OF
COUNTY OF

On this ___ day of_____, 200__, before me personally appeared _____,
to me known to be the individual(s) in and who executed the foregoing instrument, who duly
acknowledged and affirmed to me that (he) (she) executed the same as (his) (her) (their) free act and
deed and that the information stated herein is true in substance and in fact.

My Commission Expires:        _____
        Notary Public

**Notary: Please complete state, county, date and names of all persons signing and affix notarial seal.**

### DO NOT WRITE BELOW THIS POINT

SUBSCRIPTION ACCEPTED ON_____, 200__.
GENERAL PARTNER:
**LEVEL III MANAGEMENT, LLC**

By:    X _____

21

JUNG000025

## INDIVIDUAL SIGNATURE PAGE

The undersigned has executed this Agreement on this _30_ day of _Sept_, 200 _8_

Amount of Capital Contribution $ _75,000. 00_

Type of Ownership (check one):

_✓_ Individual
____ Joint Tenants with Rights of Survivorship
____ Tenants in Common
____ Tenants by the Entirety
____ Community Property
____ IRA, Self Directed or other benefit plan investor

_Jennifer Jang_
Name of Joint Purchaser (Please print)          Name of Joint Purchaser (Please print)

X _(signature)_                                  X _____
Signature                                        Signature

_____
Name of IRA Custodian
X _____
Authorized Signature

### ACKNOWLEDGMENT

STATE OF
COUNTY OF

On this ___ day of _____, 200__, before me personally appeared _____,
to me known to be the individual(s) in and who executed the foregoing instrument, who duly
acknowledged and affirmed to me that (he) (she) executed the same as (his) (her) (their) free act and
deed and that the information stated herein is true in substance and in fact.

My Commission Expires:                           _____
                                                 Notary Public

**Notary:  Please complete state, county, date and names of all persons signing and affix notarial seal.**

## DO NOT WRITE BELOW THIS POINT

SUBSCRIPTION ACCEPTED ON_____, 200__.
GENERAL PARTNER:
**LEVEL III MANAGEMENT, LLC**

By: X _____

22

JUNG000026

LEVEL III TRADING PARTNERS, L.P.
LEVEL III MANAGEMENT, LLC
General Partner
220 Hector Ave.
Metairie, Louisiana 70005
(504) 957-7902


WIRE TRANSFER INSTRUCTIONS


Wire funds as follows:

LEVEL III TRADING PARTNERS, L.P.
Capital One
**Account No.:** 2081515053
**Routing No.:** 065000090

JUNG000027

**LEVEL III TRADING PARTNERS, L.P.**
**LEVEL III MANAGEMENT, LLC**
General Partner
220 Hector Ave.
Metairie, Louisiana 70005
(504) 957-7902

**WIRE TRANSFER INSTRUCTIONS**

Wire funds as follows:

**LEVEL III TRADING PARTNERS, L.P.**
**Capital One**
**Account No.:** 2081515053
**Routing No.:** 065000090

JUNG000028

**LEVEL III TRADING PARTNERS, L.P.**
**LEVEL III MANAGEMENT, LLC**
General Partner
220 Hector Ave.
Metairie, Louisiana 70005
(504) 957-7902

## ACKNOWLEDGMENT

I have received a copy of the Disclosure Document of **LEVEL III TRADING PARTNERS, L.P.** dated July 28, 2008.

Signature _____ Date _Sept 30, 2008_