# UNITED STATES BANKRUPTCY COURT

# EASTERN DISTRICT OF LOUISIANA

---------------------------------------------------------x
In re:                                                    :    CASE NO. 13-12120
                                                          :
LEVEL III TRADING PARTNERS, L.P.    :    CHAPTER 11
                                                          :
                DEBTOR                              :    SECTION "A"
---------------------------------------------------------x

| | |
|---|---|
| PATRICK C. COTTER, IN HIS CAPACITY AS TRUSTEE OF THE LEVEL III TRADING PARTNERS, L.P. LITIGATION TRUST | ADVERSARY NO. 15-1068 |
| PLAINTIFF | |
| VERSUS | |
| JENNIFER JUNG | |
| DEFENDANT | |

## STATEMENT OF UNDISPUTED MATERIAL FACTS

**NOW INTO COURT,** through undersigned counsel, comes Defendant, Jennifer Jung, who, in support of the Motion for Summary Judgment filed herewith, states as follows:

1.

This complaint arises from a fraudulent Ponzi scheme perpetrated by an Alabama limited partnership, Level III Trading Partners, L.P., and its general partner, Bruce Gwyn.[1]

2.

---

[1] *See* "Complaint for Avoidance of Transfer," Case No. 15-1146, Rec. Doc. 1, ¶1.

1

On June 22, 2007, Bruce Gwyn ("Gwyn") registered a hedge fund known as Level III Trading Partners, L.P. ("Level III" or the "Fund") with the National Futures Association ("NFA").[2]

3.

Five years after its inception, in June 2012, Level III was subjected to a surprise audit by the NFA. The audit led to the issuance of a Member Responsibility Action ("MRA") and Associate Responsibility Action ("ARA") against Level III and Mr. Gwyn (as its principal), and uncovered facts demonstrating that (1) Mr. Gwyn personally misappropriated moneys from the Fund account; (2) Mr. Gwyn and Level III failed to disclose the nature of the Fund's risky investments to investors and misled them as to the value of the Fund's investments; and (3) Mr. Gwyn and Level III failed to cooperate with NFA and provided misleading information to the NFA in connection with its surprise audit.[3]

4.

Prior to the NFA audit, Level III attracted approximately $2.7 million in capital from innocent investors.[4] Defendant, Jennifer Jung, was one of those investors.

5.

Jennifer Jung was introduced to Gwyn by mutual friends and exposed to Gwyn's Level III sales pitch in 2008. By all accounts, Gwyn was a successful Tulane graduate, an NASD Series-3 qualified broker, and a registered Introducing Broker of the U.S. Commodity Futures Trading Commission ("CFTC") and member of the NFA. Despite Ms. Jung's limited investment

---

[2] *See* **Exhibit "A"** - Affidavit of NFA Manager, Compliance Department, Bates No. JUNG000138- JUNG000148, ¶¶ 3-4.
[3] *See* **Exhibit "A"** - Affidavit of NFA Manager, Compliance Department; *see also* **Exhibit "B"** - June 13, 2012 Email to Jennifer Jung (notifying Ms. Jung of the Member Responsibility Action and Associate Responsibility Action issued against Level III and Mr. Gwyn, as principal of Level III), Bates No. JUNG000152.
[4] *See* "Complaint for Avoidance of Transfer," Case No. 15-1146, Rec. Doc. 1, ¶2.

2

experience, she trustingly invested $75,000.00 in the Fund on September 30, 2008, after reviewing Level III's Subscription Agreement and Executive Summary.[5]

6.

Ms. Jung received monthly and quarterly statements regarding her Level III investment, which perpetuated the illusion that the Fund had moderate investment gains, kept Ms. Jung from seeking recovery of her equity investment, and kept Ms. Jung (and numerous other innocent investors) from questioning the legitimacy of the business.[6]

7.

By letter dated March 25, 2009, Ms. Jung received a 2008 Schedule K Form from Level III, further validating the legitimacy of the Fund.[7]

8.

In August 2010, Ms. Jung received an Account Statement from the Fund, which reflected that her investment had a net gain of $19,230 in July 2010.[8] In an effort to be a prudent investor, Ms. Jung formally requested a withdrawal of $20,000 from her investment on August 27, 2010. Ms. Jung's "Thirty Day Notice of Withdrawal," which is signed by Bruce Gwyn as general partner of Level III, verifies the "effective date of withdrawal" as September 1, 2010.[9]

9.

---

[5] *See* **Exhibit "C"** - Affidavit of Jennifer Jung; *see also* **Exhibit "D"** - Email from Bruce Gwyn and attached documents, including Level III Executive Summary and Subscription Agreement, Bates No. JUNG000001-29.

[6] *See* **Exhibit "E"** - Level III Monthly and Quarterly Statements, attached *in globo*, Bates No. JUNG000030-44, JUNG000049-95, JUNG000100-114, JUNG000119-124, and JUNG000127-130; *see also* Exhibit "C" - Affidavit of Jennifer Jung.

[7] *See* **Exhibit "F"** - 2008 Schedule K Form from Level III, Bates No. JUNG000045-48; *see also* Exhibit "C," Affidavit of Jennifer Jung.

[8] *See* Exhibit "E" - Account Statement dated June 30, 2010, Bates No. JUNG000094-95; *see also* Exhibit "C," Affidavit of Jennifer Jung.

[9] *See* **Exhibit "G"** - Partner's Thirty Day Notice of Withdrawal (of $20,000), Bates No. JUNG000098; *see also* Exhibit "C" - Affidavit of Jennifer Jung.

In January 2011, Ms. Jung requested withdrawal of her remaining interest in the Fund to cover personal expenses, including her daughter's wedding.[10] Level III paid Ms. Jung her remaining interest in the Fund in two installments: $50,000.00 on January 28, 2011, and $21,196.00 on April 1, 2011. The "Partner's Thirty Day Notice of Withdrawal," which is signed by both Jennifer Jung and Bruce Gwyn (and attached hereto as Exhibit "L"), confirms that the "Effective Date of Withdrawal" for Level III's final transfer to Ms. Jung of $21,196.00 was April 1, 2011.[11]

10.

At no time prior to receiving payments from the Fund did Ms. Jung know or suspect that the Fund and/or Bruce Gwyn were operating a fraudulent scheme. Moreover, at no time prior to receiving payments from the Fund did Ms. Jung know or suspect that the Fund was insolvent. Rather, Ms. Jung believed the Fund was legitimate and performing well, relying upon the veracity of monthly and quarterly Account Statements she received from the Fund, which reflected that the Fund had a net asset value of $1,696,930.40 on July 31, 2010; $1,427,936.00 on September 30, 2010; $1,602,655.00 on October 31, 2010; $1,685,388.00 on November 30, 2010; $1,272,493.00 on December 31, 2010; $1,197,869.00 on January 31, 2011; $1,321,148.00 on February 28, 2011; and $1,495,356.00 on March 31, 2011.[12]

12.

Ms. Jung, in fact, was so convinced in the legitimacy of Mr. Gwyn and the Fund that she reinvested $15,000 in the Fund on April 20, 2011, and further invested another $20,000.00 with

---

[10] See **Exhibit "H"** - Partner's Thirty Day Notice of Withdrawal (of "full interest"), Bates No. JUNG000117; *see also* Exhibit "C" - Affidavit of Jennifer Jung.

[11] *See* **Exhibit "I"** - Letter enclosing Check for $50,000.00, Bates No. Jung000118; **Exhibit "J"** - Partner's Thirty Day Notice of Withdrawal (of $21,196.00), confirming that the "effective date" of the last transfer from the Fund to Ms. Jung occurred on April 1, 2011, Bates No. D000055; *see also* Exhibit "C" - Affidavit of Jennifer Jung.

[12] *See* Exhibit "E"- Level III Monthly and Quarterly Statements, attached *in globo*; *see also* Exhibit "C" - Affidavit of Jennifer Jung.

4

Gwyn on February 1, 2012, purchasing 588,235 shares of stock in Treaty Energy Corporation (another entity of which Mr. Gwyn was Co-CEO/Director).[13]

13.

On or about June 5, 2012, Ms. Jung received an email from Simon Riveles, Esq., advising Ms. Jung and other Fund investors that Riveles Law Group had been retained by the Fund to resolve issues related to a surprise audit by the National Futures Association ("NFA"), which was prompted by the late filing of the Fund's 2011 pool financial statement ("PFS").[14]

14.

On June 13, 2012, Ms. Jung received a second email from Simon Riveles, Esq., advising Ms. Jung and other Fund investors that the NFA had completed the audit and instituted a Member Responsibility Action ("MRA") and Associate Responsibility Action ("ARA") against the Fund and Mr. Gwyn (as its principal), based upon the following allegations: Mr. Gwyn personally misappropriated moneys from the Fund account; Mr. Gwyn and Level III failed to disclosure the nature of the Fund's risky investments to investors and misled them as to the value of the Fund's investments; and Mr. Gwyn and Level III failed to cooperate with NFA and provided misleading information to the NFA in connection with its surprise audit. Attached to the July 13, 2012 email was a copy of the Notice of Member Responsibility Action and Associate Responsibility Action

---

[13] *See* **Exhibit "K"-** Level III Subscription Agreement dated April 20, 2011, Bates No. JUNG000126; *see also* **Exhibit "L"**-Treaty Energy Corporation Stock Subscription Agreement, Bates No. JUNG000131-33; Exhibit "C"-Affidavit of Jennifer Jung; *In Re: Level III Trading Partners, L.P.*, U.S.B.C. (E.D. LA 2015), Case No. 13-12120, Rec. Doc. 257, "Declaration of Bruce Gwyn," p. 2 (certifying that Ms. Jung has a claim for unpaid distributions from the Fund in the amount of $19,213.71).

[14] *See* **Exhibit "M"**-June 5, 2012 Email and Attached Correspondence, Bates No. JUNG000136-37; *see also* Exhibit "C"-Affidavit of Jennifer Jung.

served on Mr. Gwyn and Level III, which fully outlined the findings of the audit and basis of the allegations.[15]

15.

Prior to receiving the June 13, 2012 email from Simon Riveles, Esq., Ms. Jung had no knowledge of or suspicion of any improprieties, misconduct, and/or fraudulent activities perpetrated by Bruce Gwyn or the Fund.[16]

16.

The transfers to Ms. Jung, which occurred on September 1, 2010, January 28, 2011, and April 1, 2011, were made twenty (20) to fourteen (14) months *prior to* the audit, when Ms. Jung was first put on notice of alleged improprieties, misconduct, and fraudulent activities on the part of Bruce Gwyn and the Fund.[17]

17.

On August 2, 2013, several Level III investors and limited partners filed an involuntary bankruptcy case against Level III, which was converted to a voluntary Chapter 11 on October 1, 2013.[18]

18.

On April 10, 2015 -- four (4) years and nine (9) days after the *last* transfer to Ms. Jung -- Petitioner filed this Complaint for Avoidance of Transfers.[19]

19.

Bruce Gwyn filed Proof of Claim 22-2 on behalf of Ms. Jung in the amount of $19,213.71.[20]

---

[15] *See* Exhibit "B"- June 13, 2012 Email, Bates No. JUNG000152; *see also* Exhibit "C"-Affidavit of Jennifer Jung.
[16] *See* **Exhibit "C,"** Affidavit of Jennifer Jung.
[17] *See* **Exhibit "C**," Affidavit of Jennifer Jung.
[18] *See* "Complaint for Avoidance of Transfer," Case No. 15-1146, Rec. Doc. 1.
[19] *See* "Complaint for Avoidance of Transfer," Case No. 15-1146, Rec. Doc. 1.
[20] *See,* **Exhibit "N".**

20.

Ms. Jung's Claim 22-2 was converted to an equity claim by Order of this Court dated February 3, 2015.[21]

Respectfully submitted:

**KINGSMILL RIESS, L.L.C.**

By: *s/ Christy R. Bergeron*
Marguerite K. Kingsmill (Bar #7347)
Christy R. Bergeron (Bar #22944)
201 St. Charles Avenue, Suite 3300
New Orleans, Louisiana 70170
Telephone: (504) 581-3300
Facsimile: (504) 581-3310
E-mail: mkingsmill@kingsmillriess.com
E-mail: cbergeron@kingsmillriess.com

*Attorneys for Jennifer Jung*

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on this 24th day of March, 2016, I electronically filed the foregoing pleading with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record.

*s/ Christy R. Bergeron*
Christy R. Bergeron

---

[21] *See,* **Exhibit "O".**

7