# UNITED STATES BANKRUPTCY COURT

## EASTERN DISTRICT OF LOUISIANA

```
------------------------------------------------------x
In re:                                        :       CASE NO. 13-12120
                                              :
LEVEL III TRADING PARTNERS, L.P.              :       CHAPTER 11
                                              :
              DEBTOR                          :       SECTION "A"
------------------------------------------------------x

PATRICK C. COTTER, IN HIS                             ADVERSARY NO.
CAPACITY AS TRUSTEE OF THE                            15-1068
LEVEL III TRADING PARTNERS, L.P.
LITIGATION TRUST

              PLAINTIFF

VERSUS

JENNIFER JUNG

              DEFENDANT
```

### SUPPLEMENTAL MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

**NOW INTO COURT,** through undersigned counsel, comes Defendant, Jennifer Jung, who submits her Supplemental Memorandum in Support of Motion for Summary Judgment, as requested by the Court in its Order Continuing Hearing. [P-21]

### LAW AND ARGUMENT

**The Distributions to Ms. Jung are not a Fraudulent Conveyance Under Alabama Code Section 8-9A-4(a)**

A debtor's transfer is fraudulent as to a creditor whose claim arose before or after the transfer if the debtor made the transfer with actual intent to hinder, delay, or defraud any

creditor.[1] To be clear, to establish a violation under this statute, Trustee must present evidence that Fund acted with the actual intent to defraud the creditors. There is no evidence that the Fund acted with the actual intent to defraud the creditors when it honored Ms. Jung's disbursement requests.

The AFTA provides guidance for determining actual intent by pointing to indicators or badges of fraud. Intent may be determined using several factors, including whether:

   a.   **The transfer was to an insider**.

Ms. Jung does not even remotely fit the requirements of an insider of the Fund as defined by Alabama Code Section 8-9A-1(8). Ms. Jung was not a director or officer of the Fund. Ms. Jung was not a person in control of the Fund. Ms. Jung was not a relative of a general partner, director, officer or person in control of the Fund. Nor was Ms. Jung a partnership in which the Fund was a general partner, or a general partner in a partnership in which the Fund was a general partner. Accordingly, the transfer to Ms. Jung was not made to an insider, and the Trustee fails to satisfy this prong.

   b.   **The debtor retained possession or control of the property transferred after the transfer**

Ms. Jung received a distribution of $20,000 from the Fund on September 1, 2010, a distribution of $50,000.00 on January 28, 2011, and a distribution of $21,196.00 on April 1, 2011.[2] Ms. Jung received 100% of the funds; and the Fund did not retain possession or control of the funds distributed to Ms. Jung. The Trustee has not alleged that the Fund retained possession or control of the property transferred to Ms. Jung. Accordingly, the Trustee fails to satisfy this prong.

---

[1] *SE Property Holdings*, 2013 WL 4498700 at * 2 (citing Ala. Code § 8–9A–4(a)).

[2] *See* "Affidavit of Jennifer Jung," ¶ 4,5 and 6, attached as Exhibit "C" to the Statement of Undisputed Material Facts"; *See also* "Complaint for Avoidance of Transfer," Case No. 15-1146, Rec. Doc. 1.

      c.      **The transfer was disclosed or concealed;**

The Trustee has offered no evidence that the Fund concealed the transfers to Ms. Jung. As demonstrated by the exhibits to the Motion for Summary Judgment, Ms. Jung submitted the appropriate Fund paperwork to obtain the distributions, which were signed by Bruce Gwyn as general partner of the Fund. Ms. Jung received distributions on Fund checks. There is simply no evidence whatsoever that the Fund concealed the distributions to Ms. Jung. Accordingly, the Trustee fails to satisfy this prong.

      d.      **Before the transfer was made the debtor had been sued or threatened with suit;**

Trustee has offered no evidence that the Fund had been sued or threatened with suit when the disbursements to Ms. Jung were made. As detailed in her Memorandum in Support, the first inkling that there were any problems with the Fund was in June 2012 when Level III was subjected to a surprise audit by the NFA. Fourteen (14) months later, a group of eight limited partners/investors in Level III filed a Petition for Involuntary Bankruptcy, which was subsequently converted to a voluntary Chapter 11 on October 1, 2013. Ms. Jung received her disbursements on September 1, 2010, January 28, 2011 and April 1, 2011- all long before any "hint" of problems with the Fund. Accordingly, the Trustee fails to satisfy this prong.

      e.      **The transfer was of substantially all the debtor's assets;**

Ms. Jung received a distribution of only $91,196.00, which was not substantially all of the Fund's assets. Ms. Jung received monthly and quarterly Account Statements, which reflected that the Fund had a net asset value of $1,696,930.40 on July 31, 2010; $1,427,936.00 on September 30, 2010; $1,602,655.00 on October 31, 2010; $1,685,388.00 on November 30, 2010; $1,272,493.00 on December 31, 2010; $1,197,869.00 on January 31, 2011; $1,321,148.00 on

February 28, 2011; and $1,495,356.00 on March 31, 2011.[3]  The 2010 and 2011 distributions to Ms. Jung total $91,196.00, which was not substantially all of the Fund's assets. Accordingly, the Trustee fails to satisfy this prong.

### f.  **The debtor absconded;**

To the extent that this factor applies, there is no evidence that the Fund or Mr. Gwyn "absconded."  The Fund was still operating on August 2, 2013, when a group of eight limited partners/investors in Level III filed a Petition for Involuntary Bankruptcy, which was subsequently converted to a voluntary Chapter 11 on October 1, 2013.  Accordingly, the Trustee fails to satisfy this prong.

### g.  **The debtor removed or concealed assets;**

Trustee has offered no evidence that the Fund removed or concealed assets at the time of the distributions.  Accordingly, the Trustee fails to satisfy this prong.

### h.  **The value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred;**

Trustee cannot recover from Ms. Jung under Sections 8-9A-4(a) because the record establishes that Ms. Jung provided reasonably equivalent value in exchange for the distributions. Under the Alabama Fraudulent Transfer Act, "[v]alue is given for a transfer if, in exchange for the transfer, property is transferred or an antecedent debt is secured or satisfied...."[4] Reasonably equivalent value means that "the debtor has received value that is substantially comparable to the worth of the transferred property."[5]  The 2010 and 2011 distributions to Ms. Jung total $91,196.00.  Of the $91,196.00 distributed to Ms. Jung, $90,000.00 represents a return of Ms.

---

[3] *See* Exhibit "E"- Level III Monthly and Quarterly Statements; *see also* Exhibit "C" - Affidavit of Jennifer Jung.

[4] Ala. Code § 8-9A-3.

[5] *Parsons & Whittemore Enterprises Corp. v. Cello Energy, LLC*, 2011 WL 382813 (S.D. Ala. 2011) citing *BFP v. Resolution Trust Corp.,* 511 U.S. 531, 548, 114 S.Ct. 1757, 128 L.Ed.2d 556 (1994).

Jung's investments in Level III; $1,196 represents purported investment gains (*i.e.*, fictitious profits from the Fund). When Ms. Jung redeemed her interest in the Fund, the Fund received a cancellation of Ms. Jung's membership interest – which is considered reasonably equivalent value. Accordingly, the Trustee fails to meet this burden.

i. **The debtor was insolvent or became insolvent shortly after the transfer was made;**

The Trustee has failed to demonstrate that the Fund was insolvent at the time the transfers to Ms. Jung were made, or was insolvent shortly after the distributions to Ms. Jung. It is undisputed that the Fund's balance sheets around the transfers show that the Fund's assets exceeded its liabilities. The "Level III Trading Partners, L.P. Financial Statements" dated December 31, 2010 and 2009 were prepared by Kaplan & Company, Certified Public Accountants.[6] The "Statement of Assets and Liabilities", produced by the Trustee and representing the audited financial statements of the Fund as of December 31, 2010, reflects the following:

|                   | 2010        | 2009        |
|-------------------|-------------|-------------|
| Total Assets      | $1,557,253  | $1,403,164  |
| Total Liabilities | $383,704    | $23,500     |
| Partner's Capital | $1,173,549  | $1,379,664  |

These audited financial statement reflect that the Fund was solvent as of December 31, 2010.

---

[6] See "Level III Trading Partners, L.P. Financial Statements", attached hereto as Exhibit "A", and identified as D002308-2328.

The Trial Balance dated as of January 31, 2011, produced by the Trustee, also reflects the Fund was solvent. [7] The Trial Balance reflects assets of $1,449,274.87, with liabilities of only $7,166.51. That leaves equity or partner's capital of $1,192,213.27. This Trial Balance reflects that the Fund was solvent as of January 31, 2011.

As this Court is aware, the Trustee has not presented an expert reports or testimony that the Fund was insolvent at the time of the distributions to Ms. Jung. Nor were there any facts indicating that Level III was insolvent, such as a debtor's use of postdated checks or history of dishonored checks. The financial records produced by the Trustee in discovery support a finding that the Fund was solvent at the time the distributions were made to Ms. Jung. Accordingly, the Trustee has failed to meet its burden of proof when the Fund's own records establish solvency.

Insolvency is defined by the AUFTA as (1) "if the sum of the debtor's debts are greater than all of the debtor's assets at a fair valuation"; or (2) if "a debtor ... is generally not paying his debts as they become due". [8] The first definition of insolvency under the AUFTA is referred to as the "balance sheet test." [9] "The law is well settled that the value of an asset under the balance sheet test is neither the asset's value in the best case, nor is it the asset's value in the worst case." [10] Rather, most courts have assigned assets their market value at the time of the disputed transfers when assessing asset values" and then the courts compare those values to the debtor's

---

[7] See, "Level III Trading Partners, L.P. Trial Balance dated January 1, 2011 – January 31, 2011" attached hereto as Exhibit "B", and identified as D000249-272.

[8] § 8–9A–2(a) and (b).

[9] See, *In re Golden Mane Acquisitions, Inc.*, 221 B.R. 963, 967 (Bank.N.D.Ala.1997) (citations omitted); see also *Universal Church v. Geltzer*, 463 F.3d 218, 226 (2d Cir.2006)(used the "balance sheet test" to determine insolvency in analyzing an alleged constructive fraudulent transfer).

[10] *In re Golden Mane*, 221 B.R. at 967(citations omitted).

liabilities.[11] While GAAP principles do not control this court's determination of insolvency, Court's accord weight to a company's treatment of its assets and liabilities according to GAAP.[12] Applying the balance sheet test, the Fund was solvent at the time the distributions were made to Ms. Jung.

Nor is there any evidence produced by the Trustee that the Fund was not paying its debts when they became due. Applying this test, the Fund was solvent at the time the distributions were made to Ms. Jung.

### j.  The transfer occurred shortly before or shortly after a substantial debt was incurred; and

Trustee has offered no evidence that the distributions to Ms. Jung occurred shortly before or shortly after a substantial debt was incurred. Nor do any of the documents produced by Trustee in discovery reflect that substantial debt was incurred during this time frame. Accordingly, the Trustee fails to satisfy this prong.

### k.  The debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor.

Trustee has offered no evidence Ms. Jung transferred the distributions to an insider of the Debtor. As Ms. Jung represented in her affidavit, she used the funds to cover personal expenses, including her daughter's wedding.[13] Accordingly, the Trustee fails to satisfy this prong.

## CONCLUSION

Taking into account all of the circumstances surrounding the transfers to Ms. Jung, this Court should finds that the transfers were not made with the intent to defraud, hinder or delay

---

[11] Id. at 968(citations omitted).

[12] *Id*.

[13] *See* "Affidavit of Jennifer Jung,", attached as Exhibit "C" to the Statement of Undisputed Material Facts.

creditors. Accordingly, none of the transfers to Ms. Jung were actually fraudulent pursuant to Alabama Code § 8–9A–4(a). Petitioner's state law claims against Jennifer Jung should be dismissed with prejudice.

        Respectfully submitted:

        **KINGSMILL RIESS, L.L.C.**

By:   *s/ Christy R. Bergeron*
     Marguerite K. Kingsmill (Bar #7347)
     Christy R. Bergeron (Bar #22944)
     201 St. Charles Avenue, Suite 3300
     New Orleans, Louisiana 70170
     Telephone: (504) 581-3300
     Facsimile: (504) 581-3310
     E-mail: mkingsmill@kingsmillriess.com
     E-mail: cbergeron@kingsmillriess.com

     ***Attorneys for Jennifer Jung***

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on this 13th day of May, 2016, I electronically filed the foregoing pleading with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record.

        *s/ Christy R. Bergeron*
         Christy R. Bergeron